42 F.3d 1388
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Denver COLLINS, Plaintiff-Appellant
v.
FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION; Andalex
Resources, Defendants-Appellees
 No. 93-3427.
 United States Court of Appeals, Sixth Circuit.
 Dec. 6, 1994.
 
 Before: KEITH and BATCHELDER, Circuit Judges, and JOINER, District Judge.*
 PER CURIAM.
 
 
 1
 Andalex Resources discharged Denver Collins, the appellant, on January 21, 1992. After an investigation, the Secretary of Labor refused to represent Collins, finding insufficient evidence of discrimination. On July 24, 1992, Collins filed a complaint with the Federal Mine Safety and Health Review Commission, charging Andalex Resources with unlawfully discriminating against him on the basis of protected mine safety activities, in violation of Sec. 105(c)(1) of the Federal Mine Safety and Health Act.
 
 
 2
 On February 16, 1993, the administrative law judge [ALJ] denied Collins relief. Collins petitioned the Commission for discretionary review of the ALJ's findings and conclusions, which was not granted. 30 U.S.C. Sec. 823(d)(2). The decision of the ALJ therefore became the final decision of the Commission forty days after its issuance, or March 28, 1993. 30 U.S.C. Sec. 823(d)(1).
 
 
 3
 Collins appeals the Commission's determination that he was not unlawfully discharged from Andalex Resources for engaging in protected safety activities. We affirm.
 
 
 4
 * In 1988, Andalex Resources hired Denver "Beardie" Collins as a "grease monkey," or equipment service man. After six months, Collins became a continuous miner operator. A continuous miner is the machine that makes incisions in the roof of the coal mine for the purpose of extracting coal. According to Collins and many of his co-workers, several Andalex foremen actively and routinely encouraged continuous miner operators to take "deep cuts," that is, incisions in the roof of the mine which exceed federal safety regulations.
 
 
 5
 In November, 1991, Charles Smith became the section foreman supervising Collins's shift. Collins testified that Smith was particularly insistent on increasing production through deep cuts. Because Collins was concerned about the danger and the illegality of the deep cuts and other safety hazards, he consulted a former Andalex superintendent, Stanley Couch, for advice. Couch advised Collins to quit, but Collins said he could not afford to lose the job. As an alternative, Couch advised Collins to keep a record of all illegal safety practices. On November 18, 1991, Collins began keeping a daily record of all safety hazards, including his own deep cuts, and the witnesses to them. Collins testified that he never intended to reveal the contents of the notebooks. He always made his notations in private--for example, while the other miners conferred with the foreman. Nevertheless, Collins's practice was common knowledge, and Clifford Berry, the mine manager, and Willie "Tick" Sizemore, the mine superintendent, learned of Collins's recordkeeping soon after its inception.
 
 
 6
 As luck would have it, Collins lost his notebook in the mine, shortly after making and recording two deep cuts. The notebook was found by a co-worker, who turned it in to lower-level management, who in turn notified Sizemore. When questioned by Sizemore, Collins admitted making the cuts, and Sizemore, at the direction of Berry, fired him.
 
 
 7
 Until Collins's discharge, no miner had ever been discharged for taking deep cuts. In fact, in March of 1990, a section foreman was killed when rock fell from a deep cut that Collins had made in the mine roof less than an hour earlier. Federal inspectors conducted an investigation and concluded the incident was a freak accident. Although Collins was questioned about making the deep cut, no discipline followed.
 
 
 8
 Sizemore described Collins as a good worker, and at the time of his discharge, Collins was next in line for promotion to foreman.
 
 II
 
 9
 Section 105(c)(1) of the Federal Mine Safety and Health Act reads,
 
 
 10
 No person shall discharge or in any manner discriminate against or cause to be discharged or cause discrimination against or otherwise interfere with the exercise of the statutory rights of any miner, representative of miners or applicant for employment in any coal or other mine subject to this chapter because such miner, representative of miners or applicant for employment has filed or made a complaint under or related to this chapter, including a complaint notifying the operator or the operator's agent, or the representative of the miners at the coal or other mine of an alleged danger or safety or health violation in a coal or other mine, or because such miner, representative of miners or applicant for employment is the subject of medical evaluations and potential transfer under a standard published pursuant to section 811 of this title or because such miner, representative of miners or applicant for employment has instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding, or because of the exercise by such miner, representative of miners or applicant for employment on behalf of himself or others of any statutory right afforded by this chapter.
 
 
 11
 30 U.S.C. Sec. 815(c)(1).
 
 
 12
 In Sec'y of Labor ex rel. Pasula v. Consolidation Coal Co., 2 F.M.S.H.R.C. 2786, rev'd on other grounds, 663 F.2d 1211 (3rd Cir.1981), the Federal Mine Safety and Health Review Commission set forth the framework for proof of discrimination under the Act in "mixed motive" cases--that is, where the miner allegedly engaged in both protected and unprotected activity. A miner has established a prima facie case of discrimination under Sec. 105(c)(1) if a preponderance of the evidence proves
 
 
 13
 (1) that he engaged in a protected activity, and
 
 
 14
 (2) that the adverse action was motivated in any part by the protected activity.
 
 
 15
 On these issues, the miner bears the burden of persuasion. The employer may rebut the prima facie case or, in the alternative, may affirmatively defend by proving by a preponderance of all the evidence that, although part of his motive was unlawful,
 
 
 16
 (1) he was also motivated by the miner's unprotected activities, and
 
 
 17
 (2) that he would have taken adverse action against the miner in any event for the unprotected activities alone.
 
 
 18
 On the affirmative defense, the employer bears the burden of persuasion. See also Sec'y of Labor ex rel. Robinette v. United Castle Coal Co., 3 F.M.S.H.R.C. 803 (1981). The Sixth Circuit adopted the Pasula test in Boich v. Federal Mine Safety and Health Review Comm'n, 719 F.2d 194, 196 (6th Cir.1983).
 
 
 19
 In dismissing Collins's claims, the ALJ found that Collins's recording of the deep cuts was protected activity but that even if his termination had been partially motivated by that activity, it was undisputed that Berry, the mine manager, would have fired Collins due to the deep cuts alone.
 
 
 20
 On appeal, Collins's chief argument is that he established a prima facie case of discrimination which Andalex failed to rebut or overcome with an affirmative defense. Collins asserts that but for the notebooks, lower management would never have reported Collins's deep cuts to upper management; that knowledge of the discrimination by lower-level management on the basis of protected activity must be imputed to Berry; and that the burden of proof should therefore have shifted to Andalex. Collins maintains that the ALJ erred in finding Andalex's affirmative defense compelling because, but for the discriminatory acts of lower management, Berry would not have been aware of the deep cuts and thus could not have fired Collins for the deep cuts alone.
 
 
 21
 Collins also attacks the ALJ's opinion for non-compliance with 29 C.F.R. Sec. 2700.69(a) (formerly 29 C.F.R. Sec. 2700.65(a)), which requires "findings of fact, conclusions of law, and the reasons or bases for them, on all the material issues of fact, law or discretion presented by the record." Finally, Collins assigns error to the ALJ's refusal to admit the deposition of Ricky Hoskins and evidence of the allegedly lax safety practices at the Andalex mine.
 
 III
 
 22
 We review the Commission's decision de novo for legal errors. However, this court may not disturb the Commission's findings of fact unless they are unsupported by substantial evidence. 30 U.S.C. Sec. 816(a)(1); Donovan ex rel. Chacon v. Phelps Dodge Corp., 709 F.2d 86, 91 n. 7 (D.C.Cir.1983). We find it unnecessary to address Collins's particular assignments of error, because we conclude that as a matter of law Collins did not engage in activity protected by the Federal Mine Safety and Health Act.
 
 
 23
 The ALJ found Collins's recording of safety hazards to be protected activity despite Collins's avowed intention never to report the violations to the management or federal inspectors:
 
 
 24
 That Collins may not have intended the contents of his log be reported to MSHA or to Andalex officials or that the entry regarding the deep cuts on January 16 was only inadvertently disclosed to company officials is immaterial. Even a miner who has not actually engaged in a protected activity is nevertheless protected under Section 105(c) if the mine operator retaliates based only on the erroneous belief that the miner did engage in protected activity.... In addition, the mere threat of disclosure is sufficient to trigger the protections of Section 105(c).
 
 
 25
 In support of this finding, the ALJ cited Moses v. Whitley Dev. Corp., 4 F.M.S.H.R.C. 1475 (1982), aff'd, 770 F.2d 168 (6th Cir.1985).
 
 
 26
 In Moses, federal inspectors arrived after a bulldozer overturned at the mine where Elias Moses worked. Approximately three weeks later, Moses was fired. The administrative law judge concluded that the discharge occurred because the management believed Moses had engaged in the protected activity of reporting a mining accident. In fact, Moses had not called the inspectors. The Federal Mine Safety and Health Commission held that the management's conduct violated Sec. 105(c)(1) even though Moses had not exercised a right under the Act. The Commission reasoned that to deny relief would "frustrate Congressional intent that miners fully exercise their rights as participants in the enforcement of the Mine Act." Id.
 
 
 27
 Moses does not support the ALJ's determination that Collins's conduct was protected activity. In fact, the rationale of Moses counsels against awarding Collins relief. The Federal Mine Safety and Health Act reflects Congress's pronouncement that "the first priority and concern of all in the coal or other mining industry must be the health and safety of its most precious resource--the miner." 30 U.S.C. Sec. 801(a) ("Congressional findings and declaration of purpose."). The stated objective of the Act is to avert deaths, serious physical harm, and occupational diseases caused by unsafe and unhealthful working conditions and practices in the nation's mines. 30 U.S.C. Sec. 801.
 
 
 28
 Under the Act's system of enforcement, the mine operators and the miners themselves bear the "primary responsibility to prevent the existence of such conditions and practices" in the mines. 30 U.S.C. Sec. 801(e). Accordingly, as the Commission noted in Moses, Congress intended Sec. 105(c)(1) to encourage miner participation in the enforcement of the Mine Act by protecting miners against discrimination on the basis of the exercise of rights guaranteed by the Act. Moses, 4 F.M.S.H.R.C. at 1478; see S.Rep. 191, 95th Cong., 1st Sess. 36 (1977), reprinted in Senate Subcommittee on Labor, Committee on Human Resources, 95th Cong., 2d Sess., Legislative History of the Federal Mine Safety and Health Act of 1977, at 624 (1978).
 
 
 29
 This case is not like Moses. Here it is the granting of relief, not the denial, which would frustrate the congressional purpose of encouraging miner participation. Collins knowingly violated the law by taking deep cuts, cuts which he knew could result in death or serious physical injury. And Collins kept a record of these and other safety hazards, not for the purpose of reporting them to the authorities and thus helping to prevent these practices, but for the sole purpose of protecting his own job should he ever be confronted with his own violations. The congressional objective of eliminating unsafe mining practices is hardly promoted by rewarding a miner for committing and then recording safety violations that he neither reports nor intends to report. Denying relief, on the other hand, is entirely consistent with prompting miners to exercise their right to safe, healthful working conditions and permitting employers to discharge those whose unlawful conduct threatens the physical welfare of the other miners.
 
 IV
 
 30
 Congress has directed the courts to construe "protected activity" broadly, see United States v. Lake, 985 F.2d 265, 267 (6th Cir.1993), but this court declines to interpret "protected activity" in a way which would foil the Act's aim. The judgment of the Federal Mine Safety and Health Review Commission is AFFIRMED.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior District Judge for the Eastern District of Michigan, sitting by designation