RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0093p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

CUMBERLAND RIVER COAL COMPANY,

*Petitioner*,

*v.*

No. 12-3918

THE FEDERAL MINE SAFETY AND HEALTH
REVIEW COMMISSION and THE SECRETARY
OF LABOR, MINE SAFETY AND HEALTH
ADMINISTRATION (MSHA),

*Respondents*,

CHARLES SCOTT HOWARD,

*Intervenor*.

Upon Petition for Review of an Order of the
Federal Mine Safety and Health Review Commission.
No. KENT 2011-1379-D.

Argued: March 6, 2013

Decided and Filed:  April 4, 2013

Before:  MARTIN and GILMAN, Circuit Judges; FOWLKES, District Judge[*]

_____

## COUNSEL

**ARGUED:** Willa B. Perlmutter, CROWELL & MORING LLP, Washington, D.C., for Petitioner.  Lynne B. Dunbar, UNITED STATES DEPARTMENT OF LABOR, Arlington, Virginia, for Respondent Secretary of Labor.  Tony Oppegard, Lexington, Kentucky, for Intervenor.  **ON BRIEF:** Willa B. Perlmutter, CROWELL & MORING LLP, Washington, D.C., for Petitioner.  Lynne B. Dunbar, W. Christian Schumann, UNITED STATES DEPARTMENT OF LABOR, Arlington, Virginia, for Respondent Secretary of Labor.  Tony Oppegard, Lexington, Kentucky, Wes Addington, APPALACHIAN CITIZENS LAW CENTER, Whitesburg, Kentucky, for Intervenor.

_____

[*]The Honorable John T. Fowlkes, Jr., United States District Judge for the Western District of Tennessee, sitting by designation.

———————————

## OPINION

———————————

JOHN T. FOWLKES, JR., District Judge.   This appeal comes before the court because of the Federal Mine Safety and Health Review Commission's (the "Commission") denial of Cumberland River Coal Company ("CRCC") request for a Review of the Administrative Law Judge's ("ALJ") decision.   The ALJ found that CRCC discriminated against Charles Howard, a coal miner, under Section 105(c) of the Federal Mine Safety and Health Act of 1977 (the "Mine Act"), 30 U.S.C. § 815(c), because of his previous protected activity and that CRCC's asserted business justification for Howard's termination was pretextual.   The ALJ ruled that Howard should be reinstated to his former position.

Because the Commission declined to review, the ALJ's decision became the final order of the Commission, forty days after its issuance.   CRCC filed a Petition for Review in this Court, alleging that the ALJ (1) improperly found that CRCC discriminated against Howard under Section 105(c) of the Mine Act; (2) applied the wrong standard in rejecting CRCC's business justification as a defense to Howard's termination; and (3) ignored precedent and the safety objectives of the Mine Act by reinstating Howard to his former position.   We conclude that the ALJ did not err in her decision.   For the reasons set forth below, we **AFFIRM** the ALJ's decision.

## I.    Background

Charles Scott Howard, the Intervenor in this matter, has been employed as a coal miner with CRCC since March 2005.   At all relevant times, Howard was employed as an underground face worker.[1]   During his years of employment with CRCC, Howard brought seven prior discrimination complaints pursuant to the anti-discrimination

———————————

[1] As an underground face worker, he is assigned to work underground in the mine's belt corridor.

provision of the Mine Act, Section 105(c), 30 U.S.C. § 815(c)(1).[2]  His previous litigation against CRCC was well-known to those employed by CRCC and was very public.

On July 26, 2010, Howard suffered a head injury while cleaning the beltline in the mine's belt corridor.  Howard's injury caused residual physical, cognitive, and behavioral problems and required him to obtain treatment by his primary-care physician and examination by seven different specialists.[3]  Each of these physicians, except for Dr. Robert Granacher, is within CRCC's panel of physicians in its managed care network. Howard was placed on leave and received medical treatment and workers' compensation for approximately ten months.  After his ten-month leave, seven of Howard's eight physicians released him to return to work without restrictions.  Dr. Granacher released Howard back to work, but qualified that Howard should not return to any work conditions that required him to be "at height."  Specifically, Dr. Granacher stated:

> In my opinion, within reasonable medical probability, Charles Howard has a 7% neuropsychiatric impairment due to brain trauma July 26, 2010. . . . Charles Howard does require restrictions upon job performance not to work at height. . . . Charles Howard has the mental capacity to engage in any work he is trained, educated, or experienced to perform.

In sum, Dr. Granacher expressed his opinion that Howard had achieved maximum medical improvement and that his prognosis going forward was positive.

After receiving Dr. Granacher's evaluation, Howard's supervisor, William Gilliam, stated his belief that Howard could be accommodated based upon the "at height" restriction. CRCC's administration, however, decided that it needed clarification from Dr. Granacher as to the meaning of "at height."  CRCC provided Dr. Granacher

---

[2] Howard's seven prior discrimination complaints against CRCC included allegations that: CRCC assigned him to undesirable jobs because of his demanding nature; CRCC reduced the workforce to fabricate justifications to terminate him; and CRCC failed to protect his truck from vandalism in the company parking lot.

[3] The physicians who examined Howard are as follows: Dr. Chandrashekar Krishnasway, M.D., neurologist; Dr. Tamara Knox, M.D., neuropsychologist; Dr. Syamala H.K. Reddy, M.D., ophthalmologist; Dr. Travis Burt, M.D., neurosurgeon; Dr. Larry Hartman, M.D., neurosurgeon; Dr. Sachin Kedar, M.D., neuroophthalmogist; and Dr. Robert Granacher, Jr., M.D., neuropsychiatrist.

with a general job description for the position of an underground face worker. The job description accurately described Howard's job title but not Howard's specific duties.[4] During all relevant times of his injury, several members of CRCC's administration, its ownership entity, Arch Coal, Inc., and its third-party administrators, Underwriter's Safety & Claims and Bluegrass Health Network, Inc., were heavily involved in his worker compensation case.[5] All parties involved knew about the details of his injury and workers' compensation benefits and about his previous litigation against CRCC.[6] Pursuant to the release by his physicians, CRCC reinstated Howard to his previous position and enrolled him in an annual retraining program on May 16, 2011. On that same day, Dr. Granacher responded to CRCC's inquiry about the "at height" clarification and replied that he did not believe Howard could return to work as outlined by the job description. He stated that Howard should be permanently "restricted from underground coal mining and restricted from exposure to moving machinery."[7] Howard

---

[4] The job description stated that Howard could be responsible for the following duties: 1) working at heights of five to twenty feet, which is required once per week and 2) cleaning the catwalk of coal debris, which requires the worker to stand on the catwalk while cleaning the walkway of coal debris.

[5] The named administrative parties involved were: Valerie Lee, human resources manager for CRCC; Jack McCarty, human resource employee for CRCC; Gaither Frazier, general manager for CRCC; William Gilliam, production foreman at the belt corridor for CRCC; Sue McReynolds, claim adjuster at Underwriter's; Brenda Riddle, claim adjuster at Underwriter's; Gregg Sisson, supervisor at Underwriter's; Penny Carter, nurse case manager at BHN; Carolyn Rendon, nurse case manager at BHN; Denise Hartling, direct of risk management at Arch; Mike Kafoury, in-house counsel at Arch; John Lorson, vice president and chief accounting officer at Arch; Denise Davidson, workers' compensation attorney at Arch; and Mike Laskowitz, workers' compensation consultant at Arch.

[6] On August 10, 2010, Lee sent an e-mail to Kafoury telling him to check out a website regarding Howard and his video of leaking mine seals, and Kafoury forwarded it to other Arch personnel.

[7] Dr. Granacher's opinion was in direct response to a questionnaire that CRCC sent him. The form stated as follows:

1.     Do you feel Mr. Howard can return to work at the job as outlined on the attached job description?
       Yes_____ No_____
2.     If no, please advise what restrictions he would need:
       _____
3.     Restrictions are: Permanent_____ or Temporary_____

Compare questionnaire above to the first questionnaire sent to Dr. Granacher on February 1, 2011 (prior to his first evaluation):

1.     Is there evidence of a traumatic brain injury as a result of the work injury of 7-26-10?
2.     Diagnosis as it relates to the work injury of 7-26-10
3.     Is any treatment recommended for any work related diagnosis?
4.     Prognosis
5.     Has Howard achieved maximum medical improvement from your standpoint?
6.     Is there any permanent impairment as it related to the work injury of 7-26-10? Please provide the impairment rating.

was immediately removed from retraining; his workers' compensation benefits were terminated; and he was fired by CRCC. On May 23, 2011, CRCC sent Howard an official termination letter, which stated:

> Dr. Granacher, one of your treating physicians for your 7/26/2010 injury, notified Bluegrass Health Network, the workers' compensation agent for Cumberland River Coal Company (CRCC) that you would not be able to work at your underground face position due to permanent work restrictions. . . . [W]e do not have any jobs open at this time for which you are qualified that would not require you to be around operating equipment. In short, we do not know of any available job you could do, with or without accommodation given the restrictions identified by your treating physician.

On May 16, 2011, Howard filed a complaint against CRCC alleging violations of Section 105(c) of the Mine Act because CRCC would not allow him to return to his former employment due to his previous protected activity. On May 27, 2011, the Secretary of Labor ("the Secretary") filed an Application for Temporary Reinstatement for Howard, pursuant to 30 U.S.C. § 815(c)(2). Per an agreement between the Secretary and CRCC, Howard was economically reinstated. On July 20, 2011, the Commission Chief ALJ approved the economic reinstatement agreement. The Secretary filed a Discrimination Complaint on Howard's behalf on August 8, 2011.

A hearing was held before a Commission ALJ and, on June 15, 2012, the ALJ ruled that CRCC had violated Section 105(c) of the Mine Act. She ordered that Howard be fully reinstated to his previous position. Specifically, the ALJ ruled that: (1) Howard had established a prima facie case of discrimination under Section 105(c); (2) CRCC tried to prevent Howard from returning from work; and (3) CRCC's affirmative defense in response to the discrimination claim against Howard was incredible. CRCC filed a Petition for Discretionary Review before the Commission. However, the Petition was denied on July 25, 2012, and the ALJ's decision became the final order of the Commission forty days after its issuance. Under Section 106 of the Mine Act, 30 U.S.C. §§ 815(c) and 816(a)(1), "[a]ny person adversely affected or aggrieved by an order of

the Commission . . . may obtain a review of such order in [the appropriate court of appeals]." CRCC now appeals the ALJ's decision to this court.

## II.    Analysis

### A.    Standard of Review

Under the Mine Act, this court "reviews the Commission's application of law *de novo*," but the Commission's factual findings will be found conclusive if they are supported by substantial evidence. *Pendley v. Fed. Mine Safety & Health Review Comm'n*, 601 F.3d 417, 422-23 (6th Cir. 2010). The threshold inquiry in determining the substantiality of the evidence is "whether there is such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Id*. at 423 (brackets and internal quotation marks omitted). In this case, when the Commission declined to review the Petition for Discretionary Review, the ALJ's underlying decision became the final order of the Commission. Therefore, we review the ALJ's legal analysis *de novo* and the ALJ's factual determinations under the substantial evidence standard.

### B.    Prima Facie Case for Discrimination under *Pasula-Robinette*

The ALJ did not err in finding that Howard was discriminated against under Section 105(c) of the Mine Act. The purpose of the Mine Act is to ensure the safety of miners. *See* 30 U.S.C. § 802. The Mine Act also serves to protect against discrimination or interference with protected activity. *See* Section 105(c) of the Mine Act, 30 U.S.C. § 815(c). Under the Mine Act, this court analyzes discrimination complaints under the *Pasula-Robinette* framework. *See Pendley*, 601 F.3d at 423 (citing *Collins v. Fed. Mine Safety & Health Review Comm'n*, 42 F.3d 1388, 1994 WL 683938, at *2 (6th Cir. Dec. 6, 1994)); *see also Sec'y of Labor ex rel. Pasula v. Consolidation Coal Co*., 2 FMSHRC 2786 (Oct. 14, 1980), *rev'd on other grounds*, 663 F.2d 1211 (3d Cir. 1981); *Sec'y of Labor ex rel. Robinette v. United Castle Coal Co.,* 3 FMSHRC 803 (Apr. 3, 1981)). To establish a prima facie case of discrimination, a miner must show that he was: (1)

engaging in protected activity, and (2) subject to an adverse employment action that was at least partially motivated by his protected activity. *See Pendley*, 601 F.3d at 423. Once the miner has established these factors, the mine operator can then rebut the prima facie case by showing that: (1) the miner was not engaged in any protected activity, or (2) the adverse employment action was not even partially motivated by the miner's protected activity. *See id.*

The ALJ properly found that Howard engaged in protected activity during his employment. The ALJ found that Howard's seven prior filings of Section 105(c) complaints under the Mine Act constitute protected activity. Furthermore, CRCC stipulated to these facts. Thus, Howard satisfies the first prong of the prima facie case of discrimination under *Pasula-Robinette*.

As to the second prong, the ALJ properly found that Howard's termination was due, in part, to his protected activity. Through facts that support a reasonable inference of discriminatory intent, the ALJ found a causal connection between the adverse action and the protected activities. To determine whether there was a causal connection between Howard's termination and his protected activities, the ALJ used such factors as: (1) the mine operator's knowledge of the protected activity; (2) the mine operator's hostility or "animus" towards the protected activity; (3) the timing of the adverse action in relation to the protected activity; and (4) the mine operator's disparate treatment of the miner. *See Sec'y of Labor o/b/o Howard v. Cumberland River Coal Co.,* 34 FMSHRC 1396, 1397, 2012 WL 2499038, at \*2 (June 15, 2012) (citing *Sec'y of Labor o/b/o Chacon v. Phelps Dodge Corp.*, 3 FMSHRC 2508, 2516, 1981 WL 141473, at \*7 (Nov. 13, 1981), *rev'd on other grounds*, 709 F.2d 86 (D.C. Cir. 1983).

CRCC argues that because of Howard's brain injury, reinstating him to his prior position directly contradicts the purpose of the Mine Act, and that adhering to Dr. Granacher's medical opinion had no connection to Howard's protected activities. However, the ALJ addressed many of the communications between the administrators regarding Howard's case. She references a December 17, 2010 e-mail conversation

between the director of risk management and the workers' compensation attorney, which states,

> I'm wondering whether we stand a chance of getting Granacher to give [Howard] an impairment rating. . .The hope is that we will get restrictions as we need to settle with a resignation. I think that both Sherry and Howard feel they won't get any restrictions and he will be back in the driver['-]s seat (not what we want).[8]

The ALJ also pointed to other substantial evidence in the record, such as: (1) the departure from normal protocol between the various CRCC and third party administrators involved in Howard's case;[9] (2) the numerous emails between the CRCC administrators that expressed intentions to restrict Howard from returning to work; (3) CRCC's reliance on Dr. Granacher's second opinion denying Howard's return to work; (4) CRCC's disregard for the seven other physicians' opinions allowing Howard to return to work without restrictions; and (5) the lack of specificity in the job description and inquiry sent to Dr. Granacher for his clarification of "at height." Accordingly, the ALJ's decision was not in error, and CRCC's argument fails.

### C.    Cumberland River Coal Company's Business Justification for Termination

The ALJ did not err in finding that CRCC's justification for terminating Howard was pretextual. A mine operator can establish an affirmative defense under the *Pasula-Robinette* framework by showing that "while it took adverse action against the miner because of the miner's protected activity, it would have taken that action even if the miner had not engaged in protected activity." *Pendley*, 601 F.3d at 423-424. The mine

---

[8] The ALJ also specifically references a December 5, 2010 e-mail from the director of risk management to the human resource manager at CRCC, a claims adjuster at Underwriter's Safety & Claims, and a nurse case manager at Bluegrass Health Network, Inc. stating that, "Sue, have you sent the [Howard] file to Denise Davidson (this will be her biggest challenge yet)."

[9] "Frazier [general manager for CRCC] agreed that it was unusual to speak with Kafoury, the Arch Coal, Inc. attorney, before allowing a worker to return and that it often happened that an injured worker returned to work with some restriction. . . .Lee [human resource manager for CRCC] further explained that, prior to Howard's injury; she had not heard Hartling [director of management at Arch Coal, Inc.] express the desire to see a miner restricted from returning to work. In fact, witnesses for both sides agreed that the case of Howard was different in many ways from the normal worker injury case." *Cumberland River Coal Co.,* 34 FMSHRC at 1402, 2012 WL 2499038, at *7.

operator can show this by: (1) past discipline of miner, (2) unsatisfactory past work record, (3) prior notices for unacceptable behavior, or (4) the miner's noncompliance with personnel rules. *See Bradley v. Belva Coal Co.*, 4 FMSHRC 982, 993, 1982 WL 176053, at * 9 (June 4, 1982).

When a mine operator asserts its affirmative defense, the threshold inquiry is "whether [the affirmative defense is] credible and, if so, whether [it] would have motivated the particular operator as claimed." *Id.* In examining the mine operator's justification for terminating a miner, the court must examine "whether the reasons are plausible, whether they actually motivated the operator's actions, and whether they would have led the operator to act even if the miner had not engaged in protected activity." *Pendley*, 601 F.3d at 425. In doing so, the court is limited to a "restrained" examination of the mine operator's justification and may not insert its own justification. *Chacon*, 1981 WL 141473, at * 3. However, if the court concludes that the affirmative defense is "weak, implausible, or out of line with the operator's normal business practices," then the court must find that the justification is pretextual. *Sec'y of Labor o/b/o/ Price v. Jim Walter Res., Inc.,* 12 FMSHRC 1521, 1534, 1990 WL 511791, at *11 (Aug. 20, 1990).

CRCC argues that the ALJ ignored precedent and inserted her own business-judgment evaluation in the course of her review. CRCC contends that if the ALJ had properly examined the Commission's precedent regarding business justifications, she would have found that CRCC's adverse employment action against Howard was not in violation of Section 105(c) of the Mine Act.

However, CRCC misunderstands the standard by which the ALJ was to examine its business justification. As the Commission has opined,

> the reference in *Chacon* to a "limited" and "restrained" examination of the business justification defense does not mean that such defenses should be examined superficially or be approved automatically once offered. Rather, we intend that a judge, in carefully analyzing such defenses, should not substitute his business judgment or sense of "industrial justice" for that of the operator.

*Haro v. Magma Copper Co.*, 4 FMSHRC 1935, 1938, 1982 WL 176465 * 3 (Nov. 30, 1982). The only justification CRCC asserts for terminating Howard is a purported safety argument that is supported by only one physician's opinion. But CRCC discounted the conclusions of the other seven physicians' medical examinations entirely. Additionally, nothing in the record shows that Howard was disciplined, given notice of failure to comply with personnel rules, or received unsatisfactory reviews—all of which are appropriate factors to consider when examining the affirmative defense of business justification. Instead, there is substantial evidence showing that CRCC's justification was simply a pretext designed to mask the true reason for Howard's termination.

As examined above, the ALJ pointed to several examples of credible and substantial evidence in the record in reaching her findings: (1) the departure from normal protocol between the various administrators involved in Howard's case; (2) the numerous emails between the various administrators that expressed intentions to prevent Howard from returning to work; (3) the lack of specificity in the job description and inquiry sent to Dr. Granacher for his clarification of "at height;" (4) CRCC's unquestioning reliance on Dr. Granacher's second opinion disallowing Howard to return to work, even though that opinion departed significantly from the doctor's first opinion; and (5) CRCC's disregard for the seven other physicians' opinions allowing Howard to return to work without restrictions. When these facts are considered in their totality, it is evident that the ALJ did not insert her own business justification and that she properly found CRCC's business justification to be weak, outside of normal business practices, and pretextual.

### D.    Charles Howard's Reinstatement

The ALJ properly found that Howard should be reinstated to his former employment position. CRCC argues that ordering Howard to be reinstated is directly at odds with the purposes of the Mine Act, because returning to work would endanger his health. CRCC contends that Dr. Granacher's medical opinion that Howard has a seven-percent brain impairment that precludes Howard from returning to work is

unassailable.    Moreover, CRCC asserts that Dr. Granacher's opinion, as a neuropsychiatrist, should be weighed more heavily than the other seven physicians' opinions because of his more in-depth observations and examinations.

CRCC correctly points to the fact that "the first priority and concern of all in the coal or mining industry must be the health and safety of its most precious resource—the miner."  30 U.S.C. § 801(a).  This Court agrees that the purpose of the Mine Act is to "avert deaths, serious physical harm, and occupational diseases caused by unsafe and unhealthy working conditions and practices in the nation's mines."  *Collins,* 1994 WL 683938, at *4.  However, CRCC has no viable safety argument in this particular case.

Howard's seven-percent impairment was found to be minimal and unthreatening for his continued employment at the coal mine by all of his treating physicians—including Dr. Granacher.  Only after CRCC sent an overbroad job description and a brief clarification questionnaire did Dr. Granacher find that Howard should not return to work.  Consequently, in accordance with the analysis above and with the stated objectives of the Mine Act, we conclude that the ALJ did not err in ordering Howard to be reinstated.

### III.    Conclusion

For the foregoing reasons, we **DENY** CRCC's Petition for Review of the Commission's Final Order.  The Administrative Law Judge's decision is **AFFIRMED.**