**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ROBERT THOMAS, *Petitioner*, | No. 20-70541 |
| v. | MSHR No. WEST 2018-402-DM |
| CALPORTLAND COMPANY; FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION, *Respondents.* | OPINION |

On Petition for Review of an Order of the
Federal Mine Safety and Health Review Commission

Argued and Submitted December 10, 2020
Seattle, Washington

Filed April 14, 2021

Before: M. Margaret McKeown, Danielle J. Hunsaker, and
Patrick J. Bumatay, Circuit Judges.

Opinion by Judge Hunsaker

# SUMMARY[*]

## Mine Safety and Health Act

The panel granted a petition for review of a decision of the Federal Mine Safety and Health Review Commission that concluded that the petitioner failed to prove a prima facie case of discrimination under Section 105(c) of the Mine Safety and Health Act, and remanded for further proceedings.

Petitioner is a dredge operator who claimed that his former employer CalPortland Company discriminated against him for engaging in protected activities related to safety issues. The Mine Act subjects mine operators, like CalPortland, to a variety of requirements, including safety standards and employment practices. Petitioner filed a Section 5(c)(3) action with the Commission, and, after an administrative law judge found for petitioner, the Commission reversed the administrative law judge's finding of discrimination and dismissed the case.

In discrimination cases under Section 5(c) of the Mine Act, the Commission has applied the *Pasula-Robinette* framework. Interpreting Section 105(c) in light of recent Supreme Court precedent, the panel concluded the Commission applied the wrong causation standard, and granted the petition for review and remanded. The panel held that Section 105(c)'s unambiguous text required a miner asserting a discrimination claim to prove but-for causation.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Therefore, the panel rejected the *Pasula-Robinette* framework. The panel held that it was for the Commission to apply the but-for standard to this case in the first instance on remand.

## COUNSEL

Colin F. McHugh (argued), Trevor Cartales, and Alex Higgins, Navigate Law Group, Vancouver, Washington, for Petitioner.

Brian P. Lundgren (argued), Jackson Lewis P.C., Seattle, Washington, for Respondents.

## OPINION

HUNSAKER, Circuit Judge:

Robert Thomas—a dredge operator—claims his former employer CalPortland Company discriminated against him for engaging in protected activities related to safety issues. In this appeal, Thomas challenges the Federal Mine Safety and Health Review Commission's (Commission) conclusion that he failed to prove a prima facie case of discrimination under Section 105(c) of the Mine Safety and Health Act (Mine Act). Interpreting Section 105(c) in light of recent Supreme Court precedent, we conclude the Commission applied the wrong causation standard, and we grant the petition and remand.

# I.  BACKGROUND

## A.  The Sanderling's dredging operation

CalPortland operates the Sanderling, a 220-foot dredge, on the Columbia River. Like its much smaller avian namesake, the Sanderling sucks. Specifically, it sucks sand from the riverbed, deposits it in compartments on the deck, and—with a push from its towboat, the Johnny Peterson—transports the sand to CalPortland's Vancouver, Washington facility. Once there, the crew unloads the sand with water cannons, creating a slurry that flows from the Sanderling to a settling pond via underground pipes.

The Sanderling dredge is not just a boat—it is classified as a surface mine and, accordingly, is regulated by the Mine Act, 30 U.S.C. § 803. The Mine Act subjects mine operators, like CalPortland, to a variety of requirements, including safety standards and employment practices. CalPortland and the Mine Safety and Health Administration (MSHA) often work together collaboratively; for example, MSHA reviewed and approved CalPortland's Sanderling fall-protection safety training. To verify CalPortland's compliance, MSHA inspectors examine CalPortland's mining facilities, including the Sanderling.

The Sanderling's crew includes Thomas, dredge operator, and Joel McMillan, deckhand. Helming the towboat and rounding out the crew is the captain of the Johnny Peterson, a third-party contractor. The shore operations include CalPortland's marine manager, Dean Demers, who oversees and has management authority over the Sanderling and her crew. Demers reports to CalPortland's general manager of aggregates for Oregon material, David McAuley. McAuley works with

CalPortland's safety manager, Jeff Woods, and human resources manager, Candy Strickland.

## B. Work-schedule dispute

Thomas started working for CalPortland in 2002 as a deckhand. In 2015, he was promoted to dredge operator—the Sanderling's person in charge (PIC). *See* 30 C.F.R. § 56.18009. Two years later, in July 2017, Demers became CalPortland's marine manager. As marine manager, Demers led safety investigations involving the Sanderling and her crew. He also played a leading role in disciplining Sanderling crew members, in consultation with McAuley and Strickland, but delivering any disciplinary message, including termination, himself.

Sometime in fall 2017, Thomas and McMillan complained to Demers that the lack of other crew members forced them to work long hours, without relief. While Demers responded that "he was working on it," Thomas and McMillan did not believe he was sincere. Although Thomas testified that working such long hours was unsafe, he did not say that he told Demers about his safety concerns and Demers testified that Thomas did not. In response to Thomas's and McMillan's complaints about long hours, Demers moved several CalPortland miners from rock barges to the Sanderling to relieve Thomas and McMillan. Thomas and McMillan testified that these miners were inadequately trained, however, and they refused to sign off on the training forms for these miners.

## C. Thomas's safety violation

On January 24, 2018, an MSHA inspector spotted Thomas working on the Sanderling without his personal flotation device (PFD) as the dredge arrived in Vancouver.

According to Thomas, he removed his PFD while welding to prevent it from catching fire. According to the MSHA inspector, he saw Thomas on a ladder without his PFD—an egregious safety violation. The inspector and Thomas discussed the incident on deck, and Thomas admitted that he was not wearing his PFD for some period of time but disputed he was on a ladder without it on. Thomas informed Demers of his conversation with the inspector and went home.

## D.  CalPortland's disciplinary actions

The next morning, Thomas returned to work and discussed the incident again with Demers and the inspector. Thomas and the inspector continued to disagree about whether Thomas was on the ladder without his PFD. After the conversation, Demers and McAuley decided to suspend Thomas pending investigation. As Thomas had already returned to the Sanderling, Demers called ahead and told McMillan he was on his way to "get rid of [Thomas]," instructing McMillan to ensure Thomas did not leave.

On January 29, Demers and Woods interviewed Thomas. They provided Thomas with the MSHA inspector's statement and Thomas responded that "this whole thing is nothing but a sham." Woods left thereafter, and Thomas filled out a more detailed report. Later that afternoon, Strickland, McAuley, and Demers met to discuss the situation and decided that Demers would begin drafting a discipline recommendation. Demers sent his first draft to Strickland—recommending termination—that day.

The following afternoon, Demers mistakenly emailed the second draft of his discipline recommendation—still recommending termination—to the entire barge-scheduling email list, which included Thomas. When Thomas read the

email the morning of January 31, he immediately canceled his scheduled meeting with Demers and hired an attorney, believing he had been terminated.

On February 1, McAuley called Thomas at home. Thomas instructed McAuley to direct all further communications to his attorney. That same day, Strickland decided to begin the voluntary resignation process based on Thomas's refusal to communicate. She sent two letters to Thomas indicating he had until February 8, 2018, to respond or CalPortland would consider him to have voluntarily resigned; Thomas rejected delivery of both letters. On February 9, Strickland sent Thomas another letter confirming Thomas's voluntary resignation; again, Thomas rejected it.

### E. Thomas's discrimination claim

Thomas filed a written discrimination complaint with MSHA, alleging he was disciplined and ultimately terminated for engaging in protected activity regarding his safety concerns and his safety violation. MSHA declined to pursue the discrimination claim on Thomas's behalf, and Thomas filed a Section 105(c)(3) action with the Commission, which CalPortland contested. After a hearing, the Administrative Law Judge (ALJ) found for Thomas, concluding that CalPortland took adverse action against him because of his protected activity, including speaking with the MSHA inspector after the inspector observed Thomas's safety violation and reporting his concerns about safety and insufficient crew training to CalPortland. CalPortland petitioned for administrative review, which was granted, and the Commission reversed the ALJ's finding of discrimination and dismissed the case. Thomas now petitions our court for review.

## II.  STANDARD OF REVIEW

We review the Commission's interpretation of a statute de novo and its factual findings for substantial evidence. *See Stillwater Mining Co. v. Fed. Mine Safety & Health Rev. Comm'n*, 142 F.3d 1179, 1183 (9th Cir. 1998); *Knox Creek Coal Corp. v. Sec'y of Labor*, 811 F.3d 148, 157 (4th Cir. 2016). If the statute's meaning is plain, "that is the end of the matter," and we need not defer to the Commission's interpretation. *Royal Foods Co. v. RJR Holdings, Inc.*, 252 F.3d 1102, 1106 (9th Cir. 2001); *Chevron v. Natural Resources Defense Council*, 467 U.S. 837, 842–44 (1984); *see also Local Union 1261, Dist. 22, United Mine Workers of Am. v. Fed. Mine Safety & Health Review Comm'n*, 917 F.2d 42, 44 (D.C. Cir. 1990). Substantial evidence means "more than a mere scintilla[] but less than a preponderance;" it is an extremely deferential standard. *NLRB v. Int'l Bd. of Elec. Workers, Local 48*, 345 F.3d 1049, 1054 (9th Cir. 2003) (citation omitted); *Velasquez-Gaspar v. Barr*, 976 F.3d 1062, 1064 (9th Cir. 2020).

## III.  DISCUSSION

"The purpose of the Mine Act is to ensure the safety of miners." *Cumberland River Coal Co. v. Fed. Mine Safety & Health Review Comm'n*, 712 F.3d 311, 317 (6th Cir. 2013) (citing 30 U.S.C. § 802). "The Mine Act also serves to protect against discrimination or interference with protected activity." *Id.* (citing 30 U.S.C. § 815(c)). In discrimination cases under Section 105(c) of the Mine Act, the Commission has applied the *Pasula-Robinette* framework. *Secretary ex rel. Pasula v. Consolidation Coal Co.,* 2 FMSHRC 2786, 2799 (1980), *rev'd on other grounds sub nom., Consolidation Coal Co. v. Marshall*, 663 F.2d 1211 (3d Cir. 1981); *see also Cumberland River*, 712 F.3d at 317–18. Under this framework, a miner proves a prima facie case of

discrimination by showing that: (1) he engaged in protected activity and (2) was subject to an adverse action motivated "at least partially . . . by his protected activity." *Cumberland River*, 712 F.3d at 318; *see also Donovan ex rel. Chacon v. Phelps Dodge Corp.*, 709 F.2d 86, 88 (D.C. Cir. 1983). The mine operator may then rebut the prima facie case by showing: "(1) the miner was not engaged in any protected activity, or (2) the adverse employment action was not even partially motivated by the miner's protected activity." *Cumberland River*, 712 F.3d at 318. Or, if the mine operator cannot rebut the prima facie case, it may assert an affirmative defense by demonstrating—by a preponderance of evidence—that: (1) the adverse action was also motivated by the miner's unprotected activity; and (2) the adverse action would have been taken in response to the unprotected activity alone. *Id.* at 319.

We have never adopted the *Pasula-Robinette* framework in a published opinion. Indeed, it appears we have resolved only two discrimination appeals under Section 105(c) of the Mine Act, which both resulted in unpublished dispositions. *Bennett v. Fed. Mine Safety & Health Rev. Comm'n*, 12 F. App'x 492 (9th Cir. 2001); *Jaxun v. Fed. Mine Safety & Health Rev. Comm'n*, 408 F. App'x 70 (9th Cir. 2011). And of these two cases, only *Bennett* explicitly cites and applies the *Pasula-Robinette* framework. 12 F. App'x at 494.

On appeal, CalPortland argues that the *Pasula-Robinette* standard should no longer apply to Section 105(c) cases. In his reply brief, Thomas agreed that *Pasula-Robinette* conflicts with Supreme Court precedent. Specifically, in their briefing, both parties urged us to construe the word "because" in Section 105(c) to mean "but-for" causation, rather than the *Pasula-Robinette* partially motivated

standard. Citing *Burrage*,[1] *Nassar*,[2] *Gross*,[3] and *Bostock*, the parties claimed that the *Pasula-Robinette* standard conflicts with the Court's instruction that the ordinary meaning of "because" incorporates the "simple and traditional standard of but-for causation." *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1739 (2020) (internal quotation marks omitted) (citing *Nassar*, 570 U.S. at 346, 360). At oral argument, however, Thomas changed his position and now argues that we should apply the *Pasula-Robinette* standard.

The recent Supreme Court precedent cited above strongly supports reading "because" to require a "but-for" causation analysis. In *Burrage*, *Nassar*, *Gross*, and *Bostock*, the Court considered the meaning of "because of" and similar phrases in various statutory schemes and concluded that the ordinary meaning mandates but-for causation. The Court noted, however, that the ordinary meaning may not control when there is "textual or contextual indication to the contrary." *Burrage*, 571 U.S. at 212. For example, in *Bostock*, the Court explained that Congress can avoid imposing liability under a but-for causation theory by drafting legislation that uses terms like "solely" and "primarily" to modify "because of." *Bostock*, 140 S. Ct. at 1739. Such terms would modify the traditional but-for standard, indicating respectively that "actions taken 'because of' the confluence of multiple factors do not violate the law" or "the prohibited factor had to be the main cause of the defendant's challenged employment decision." *Id.*

---

[1] *Burrage v. United States*, 571 U.S. 204, 212–17 (2014).

[2] Univ. of Sw. Tex. Med. Ctr. v. Nassar, 570 U.S. 338, 346–60 (2013).

[3] *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 174–80 (2009).

(noting that Congress can also draft a statute that uses a "motivating factor" causation standard). But absent such modifiers, the Court instructs us that "because of" means "but for." *Id.* And—at least in the Title VII context—a "but-for causation standard means a defendant cannot avoid liability just by citing some *other* factor that contributed to its challenged employment decision." *Id.*

Because we have not previously addressed the applicability of the *Pasula-Robinette* standard in the context now before us, the horizon is clear of binding precedent. *Pedroza v. BRB*, 624 F.3d 926, 931 (9th Cir. 2010) (explaining "an unpublished decision is not precedent"). We begin our interpretive exercise with the plain text of Section 105(c). *See Bottinelli v. Salazar*, 929 F.3d 1196, 1199 (9th Cir. 2019) (beginning and ending its statutory interpretation with the plain text). Section 105(c) prohibits a mine operator from discriminating against a miner "because" the miner engaged in protected activity. 30 U.S.C. § 815(c)(1). It protects against discrimination via the following language:

> No person shall discharge or in any manner discriminate against or cause to be discharged or cause discrimination against or otherwise interfere with the exercise of the statutory rights of any miner, representative of miners or applicant for employment in any coal or other mine subject to this chapter **because** such miner, representative of miners or applicant for employment has filed or made a complaint under or related to this chapter, including a complaint notifying the operator or the operator's agent, or the representative of the miners at the coal or other mine of an alleged danger or safety or

> health violation in a coal or other mine, **or because** such miner, representative of miners or applicant for employment is the subject of medical evaluations and potential transfer under a standard published pursuant to section 811 of this title **or because** such miner, representative of miners or applicant for employment has instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding, **or because** of the exercise by such miner, representative of miners or applicant for employment on behalf of himself or others of any statutory right afforded by this chapter.

*Id.* (emphasis added). We note that Section 105(c) uses the term "because" four times, and each time without any modifiers. We also note that no other provision in Section 105(c) expands upon, or modifies, the substantive protections in the above quoted language—they merely describe the enforcement and adjudication process. *See id.* § 815(c)(2), (3).

The lack of modifiers before or after "because," and the ordinary meaning of "because," plainly indicate that Section 105(c) incorporates the "simple and traditional standard of but-for causation." *Bostock*, 140 S. Ct. at 1739 (internal quotation marks omitted) (citation omitted). Had Congress wished to deviate from this "traditional background principle[] against which [it] legislate[s]," it would have provided a "textual or contextual indication." *Burrage*, 571 U.S. at 212–14 (internal quotation marks omitted) (citing *Nassar*, 570 U.S. at 347). Yet nothing in the text of Section 105(c) or the surrounding provisions indicates that

Congress attempted to deviate from the customary meaning. *See generally* 30 U.S.C. § 815. Section 105(c)'s plain meaning then requires a but-for causation standard for employment discrimination under the Mine Act.

In interpreting a different statute, we recently relied on *Gross* and *Nassar* to discard circuit precedent requiring a "motivating factor" test for causation. *Murray v. Mayo Clinic*, 934 F.3d 1101, 1106 (9th Cir. 2019). In *Mayo Clinic*, the underlying statute, the ADA, used a phrase that "indicate[d] but-for causation" and did "not contain any explicit motivating factor language." *Id.* (internal quotation marks omitted). In holding that the relevant ADA provision required but-for causation, we looked only to the text of the provision at issue. *Id.* (noting also that "[the Court] must be careful not to apply the rules applicable under one statute to a different statute without careful and critical examination" (quoting *Gross*, 557 U.S. at 174)). As *Mayo Clinic* extended the holdings of *Gross* and *Nassar* to a statute not at issue in those cases, we do not venture into uncharted waters by applying the "because means but-for" rule to the Mine Act. Indeed, as *Mayo Clinic* predated *Bostock*—which reinforced and amplified the holdings of *Gross* and *Nassar*—*Bostock* placed an additional marker by which to navigate.

Still, we consider the decisions of our sister circuits and the Commission. It appears that no circuit has considered whether to reject *Pasula-Robinette* based on the cases cited above, *see, e.g.*, *Hopkins Cnty. Coal, LLC v. Acosta*, 875 F.3d 279, 288–89 (6th Cir. 2017); *Harrison Cnty. Coal Co. v. Fed. Mine Safety & Health Rev. Comm'n*, 790 F. App'x 210, 213 (D.C. Cir. 2019). However, in 2016, the Commission reconsidered *Pasula-Robinette* in light of *Gross* and *Nassar* and declined to change direction. *Riordan v. Knox Creek Coal Corp.*, 38 FMSHRC 1914, 1920, 2016

WL 5594252, at *6 (August 23, 2016). Under *Chevron*, we need not consider the Commission's interpretation because the statutory text is unambiguous, but we nonetheless explain why we find unpersuasive the Commission's decision not to adopt but-for causation despite *Nassar* and *Gross*.

In *Riordan*, the Commission stated that "[i]n both *Nassar* and *Gross*, the Supreme Court emphasized that the legislative history and context of the discrimination provisions were essential to interpreting what standard of causation applies" and concluded "the legislative history of the Mine Act affirmatively demonstrates that Congress envisioned such a burden-shifting framework when drafting the discrimination protections of section 105(c)(1)." *Id.* Even assuming the legislative history of the Mine Act weighs as strongly in favor of *Pasula-Robinette* as the Commission asserts, its premise for looking to the legislative history was flawed. In neither *Nassar* nor *Gross* did the Court look to the legislative history to determine the causation standard—much less "emphasize[]" it as the Commission claimed. *See Nassar*, 570 U.S. at 346; *Gross*, 557 U.S. at 175–76. Neither decision even used the phrase "legislative history." Instead, both decisions considered the text of the provision at issue and its context, e.g., how it fits into the statute as a whole and how the statute at issue compares to other similar statutes. *See Nassar*, 570 U.S. at 360 ("Based on these textual and structural indications, the Court now concludes [but-for causation applies]. . ."); *Gross*, 557 U.S. at 175–76 ("[The Court's] inquiry. . . must focus on the text."). Thus, the Commission overstated those decisions by arguing that their holdings flow from an analysis of legislative history.

## IV. CONCLUSION

In the end, the only question we must answer is simple. Section 105(c)'s unambiguous text requires a miner asserting a discrimination claim under Section 105(c) to prove but-for causation. Therefore, as the parties both requested originally, we reject the *Pasula-Robinette* framework. The Supreme Court has instructed multiple times that the word "because" in a statutory cause of action requires a but-for causation analysis unless the text or context indicates otherwise. Section 105(c) contains no such indication. And we drop anchor there because it is for the Commission to apply the but-for standard to this case in the first instance on remand.[4]

The petition for review is **GRANTED** and **REMANDED** to the Commission for further proceedings consistent with this opinion.

---

[4] We further note the Commission is statutorily bound to review the ALJ's factual findings for substantial evidence, and it errs if it "substitute[s] a competing view of the facts for the view the ALJ reasonably reached." *Donovan ex rel. Chacon*, 709 F.2d at 92. Although we do not reach the issue, the Commission on remand should pay particular attention to Thomas's argument regarding whether the Commission appropriately deferred to the ALJ's factual findings and credibility determinations.