# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-2213
_____

Continental Cement Company

*Petitioner*

v.

Secretary of Labor; Mine Safety and Health Administration, (MSHA), on behalf of
Tara Otten; Federal Mine Safety and Health Review Commission

*Respondent*s
_____

Petition for Review of an Order of the
Federal Mine Safety & Health Administration
_____

Submitted: January 9, 2024
Filed: February 28, 2024
_____

Before LOKEN, ARNOLD, and STRAS, Circuit Judges.
_____

ARNOLD, Circuit Judge.

The Federal Mine Safety and Health Review Commission determined that the Continental Cement Company, LLC, had discriminated against one of its miners when, after she accompanied mine inspectors during an inspection, it did not pay her as much as if she had worked instead. Continental petitions our court for review of that decision. Reviewing the commission's legal conclusions de novo and its factual

findings for substantial evidence, *see Northshore Mining Co. v. Sec'y of Labor*, 46 F.4th 718, 727 (8th Cir. 2022), we grant the petition.

Continental employed Tara Otten as a "laborer" at its limestone mine in Hannibal, Missouri. When needed, Otten worked as a "mobile equipment operator" or "MEO," and when she did, Continental paid her about three dollars more per hour than her regular wage. When Continental needed a laborer to perform MEO work, it would turn to Otten first because she was the most senior laborer trained to operate mobile equipment, as a collective-bargaining agreement between Continental and its employees required. Continental does not dispute that Otten would have accepted invitations to operate mobile equipment.

The Mine Safety and Health Administration (MSHA) periodically inspected the mine. At the relevant time, Otten was a designated miners' representative who accompanied inspectors as they walked around the mine conducting inspections. Federal law gives her this so-called "walkaround right." Under 30 U.S.C. § 813(f), a representative of miners like Otten "shall be given an opportunity to accompany [inspectors] during the physical inspection . . . for the purpose of aiding such inspection." That provision goes on to say that a miners' representative "who is also an employee of the operator shall suffer no loss of pay during the period of his participation in the inspection."

Otten says that Continental, as the law requires, had habitually paid her the higher MEO rate when she would have operated mobile equipment but was instead exercising her walkaround right. That practice ceased, however, at the direction of a human-resources specialist named Heather Ames. Ames asserted in an email that providing upgraded pay in these circumstances was a "past practice" that the collective-bargaining agreement had undone. She explained in another email that when Otten "is unavailable for a job, she is not available—no different than if she was on vacation or in the store house filling in, she would not get the upgrade . . . .

-2-

She chooses to work with MSHA." Ames later testified that she made the decision "based solely on the Collective Bargaining Agreement."

Under 30 U.S.C. § 815(c)(1), "[n]o person shall discharge or in any manner discriminate against . . . any miner [or] representative of miners . . . in any coal or other mine subject to this chapter . . . because of the exercise by such miner [or] representative of miners . . . of any statutory right afforded by this chapter." Otten filed a complaint of discrimination against Continental with the MSHA, and after an investigation, the Secretary of Labor filed a discrimination claim on Otten's behalf with the commission. The Secretary alleged that Otten "was illegally discriminated against when she suffered a loss of pay as a result of" exercising her walkaround right.

An administrative law judge sided with the Secretary. The ALJ held that since Continental had caused Otten to suffer a loss of pay and thus violated § 813(f), it had discriminated against Otten under § 815(c)(1). The ALJ also held, in the alternative, that Continental's decision not to pay Otten the higher wage was motivated by her exercise of her walkaround right. So the ALJ ordered Continental to pay Otten $388.39 plus pre-judgment interest, as well as a civil penalty of $17,500. On review, the commission agreed with the ALJ, explaining that the Secretary need not show that Continental had discriminatory animus toward Otten to make out a § 815(c)(1) claim since § 813(f) prohibits a loss of pay "regardless of intent." It also upheld the ALJ's alternative determination that Otten's protected activity motivated Continental's decision, as the loss of pay "would not have occurred 'but for' her" participating in an inspection.

One commissioner wrote separately. He agreed that Continental had violated § 813(f) because Otten had wrongly suffered a loss of pay. But he explained that the MSHA has two "routes" available to it in such circumstances. It could proceed against Continental under 30 U.S.C. § 814(a), which permits the Secretary to issue

a citation to the mine operator if the Secretary believes it has committed a violation like the one here. According to this commissioner, a "citation is straightforward and does not require proof of action motivated by protected activity." The MSHA's other route is to file a discrimination claim under § 815(c)(1). But in that case, the commissioner maintained, the Secretary must demonstrate that the employer didn't pay an employee what she would have received "because" she engaged in protected activity. Here, said the commissioner, the record did not show that Otten received lower pay because she exercised her walkaround right; the only relevant evidence was that it was because of Ames's interpretation of the collective-bargaining agreement. The commissioner faulted the commission for accepting the ALJ's "deeply flawed reasoning" that a discrimination claim "need not contain any element of expressly required causation." For this commissioner, the word "because" in § 815(c)(1) requires "a motivational nexus between the protected activity and adverse action," and so a violation of § 813(f) is not a per se violation of § 815(c).

We conclude that this commissioner has the better part of the argument. It's true that Otten wrongly suffered a loss of pay and so Continental violated § 813(f). But it cannot be that Continental's violation of § 813(f) necessarily means that it violated § 815(c)(1) as well. Section 815(c)(1) prohibits a mine operator from "discriminat[ing]" against a miner. As the Supreme Court recently emphasized, "[p]rohibited discrimination occurs when an employer intentionally treats a person worse because of a protected characteristic." *See Murray v. UBS Sec., LLC*, 144 S. Ct. 445, 453 (2024). The Secretary maintained at oral argument that § 813(f) is a strict-liability statute, so, to borrow the Secretary's hypothetical, a mine operator could violate that statute simply because "something went wrong with the accounting and the miner did not get paid properly for the time that she spent" exercising her walkaround right. That's no doubt true. But it makes scant sense to say that a mine operator who unknowingly or unintentionally shortchanges an employee has intentionally treated that person worse, i.e., discriminated against her.

-4-

We turn now to the commission's conclusion that Continental paid Otten less than she otherwise would have earned because she exercised her walkaround right. Continental argues that § 815(c)(1) requires Otten to demonstrate that Continental acted with "retaliatory motive" or "retaliatory animus." But we agree with the Secretary that "motive" and "animus" are different things. As the Secretary explains, "[a]n adverse action can be *motivated*, i.e., caused, by [an employee engaging in] a protected activity without the decisionmaker harboring discriminatory *animus*—i.e., harboring a desire to retaliate or punish." The Supreme Court has made this point clear, most recently in *Murray* where it said that the verb "discriminate" does not carry "[a]n animus-like 'retaliatory intent.'" *See Murray*, 144 S. Ct. at 453. So, for example, an employer that requires women to contribute more to a pension plan because they tend to live longer than men (rather than because it harbors animus against women) still discriminates on the basis of sex. *See City of Los Angeles, Dep't of Water & Power v. Manhart*, 435 U.S. 702, 704, 711 (1978).

But an employer's treatment of an employee must still be "because of" the employee's characteristic or activity that the law seeks to protect before it is actionable. *See Murray*, 144 S. Ct. at 453. The Supreme Court has explained that one thing the phrase "because of" requires a plaintiff to prove is but-for causation, *see Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009), which means that the Secretary must show that Continental would not have underpaid Otten but for her exercise of her walkaround right. There is some question about whether the commission has in previous cases understood "because of" in § 815(c)(1) to require but-for causation. The commission has traditionally employed a burden-shifting approach for analyzing § 815(c)(1) discrimination claims, and at least one circuit has rejected that approach because it appeared to require merely that a miner's protected activity serve as partial motivation for the mine operator's decision rather than as a but-for cause. *See Thomas v. CalPortland Co.*, 993 F.3d 1204, 1209–11 (9th Cir. 2021). Here, though, the Secretary takes the position that the commission's traditional

approach indeed requires but-for causation, and she proceeds to argue the case with that understanding. So we will, too.

Otten's exercise of her walkaround right was certainly a but-for cause of Continental's decision to underpay her: had she not exercised that right, she would have worked as an MEO at times and received upgraded pay. But that's not enough for her to succeed on her claim. Though the Supreme Court has explained that the phrase "because of" in antidiscrimination laws means traditional but-for causation, *see Gross*, 557 U.S. at 176, it has not held that but-for causation is the only causal showing that a plaintiff must make to succeed on a discrimination claim. Quite the opposite. A showing of but-for causation is necessary but not sufficient. For example, in a Title VII discrimination case, the Supreme Court noted that the phrase "because of" typically incorporates the traditional standard of but-for causation "at a minimum," *see E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 772–73 (2015), suggesting that a plaintiff needs to show more than but-for causation. And in *Gross*, the Court squarely held that a discrimination claim brought under the Age Discrimination in Employment Act "cannot succeed unless the employee's protected trait actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." *See Gross*, 557 U.S. at 176 (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)).

We've made the same point. *See Kipp v. Mo. Highway & Transp. Comm'n*, 280 F.3d 893 (8th Cir. 2002). There, an employee named Kipp filed a complaint with the Equal Employment Opportunity Commission alleging gender discrimination after she didn't receive a promotion. Another employee's girlfriend heard about the complaint and told the department that Kipp had spent time at her house while on the clock instead of working. The department investigated the allegations and fired Kipp, so she sued the department. *See id.* at 895–96.

On appeal, we rejected the contention that Kipp had proved the required causal link between the filing of Kipp's discrimination charge and her termination. We explained that, "as a literal matter," there was a causal connection between her filing of the EEOC complaint and her termination because, without her filing that complaint, no one would have raised allegations against her. *See id.* at 896–97. In other words, her filing of the EEOC complaint was a but-for cause of her termination. But, we explained, a "causal link" meant that the employee's protected characteristic must have actually "played a part in the adverse employment action." *See id.* at 897. Cases from other circuits are in accord. *See, e.g.*, *Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1241–43 (11th Cir. 2010).

Although Otten would not have received less pay if she had not exercised her walkaround right, there's no evidence that Continental paid her less "for the reason that" she exercised that right. *See id.* at 1242. The record shows that Ames was indifferent to the reason for Otten's unavailability. For all Ames cared, Otten could have been "on vacation or in the store house filling in"; the only relevant fact to her was that Otten was unavailable to operate mobile equipment. Ames, moreover, denied upgraded pay to two other employees at the same time she denied Otten upgraded pay because they were performing carpentry work, demonstrating that Ames was not singling out those who engaged in protected activities. On this record, Ames was not discriminating against Otten because she exercised her walkaround right; rather, Ames was treating Otten just like all other employees who were unavailable to perform MEO work.

To illustrate why a mere showing of but-for causation will not suffice to carry the day for Otten, suppose that Ames didn't know where Otten was on the days in question. Perhaps she could have noticed Otten's absence and believed she was on vacation or sick, and so she denied her upgraded pay. If it turned out that Otten was exercising her walkaround right, we fail to see how one could say that Ames had discriminated against Otten "because" she exercised her walkaround right. While

-7-

Otten would not have suffered a loss of pay but for the exercise of her walkaround right, that loss cannot be said to have occurred "because" she exercised that right when the decisionmaker didn't even know she had, as it could not have "actually played a role in the employer's decisionmaking process." *See Gross*, 557 U.S. at 176.

It follows that the commission erred in concluding that Continental had discriminated against Otten "because of" her exercise of her walkaround right. Our holding does not, as the Secretary asserts, elevate the requirements of the collective-bargaining agreement above the requirements of federal law; it's just that Ames's reliance on that agreement, though incorrect, explains why she denied Otten upgraded pay.

The ALJ also determined that Continental denied Otten upgraded pay at least in part because it viewed Otten as a "safety nuisance." It is not clear why the ALJ believed that, though earlier in his opinion he recounted interactions between Otten and the yard supervisor that reflected that "at least some in management were not big fans of Ms. Otten and her active stance on safety matters." It's also not clear whether the commission upheld this finding, but if it did, we would still grant the petition for review because substantial evidence does not support the ALJ's finding. Neither the ALJ nor the commission identified evidence to suggest that Ames (the decisionmaker) viewed Otten as a "safety nuisance." That others at Continental did so is insufficient. *See Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 882 (8th Cir. 2005).

We therefore grant Continental's petition for review and reverse the commission's determination that Continental violated § 815(c)(1).

_____